**Case No. 25-40237**

---

## IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

---

ENVTECH, INCORPORATED,

**Plaintiff – Appellant,**

v.

PATRICK ANDREW DEBUSK,

**Defendant – Appellee.**

---

On Appeal from the United States District Court
for the Southern District of Texas, Galveston Division
The Honorable Jeffrey V. Brown, Presiding
Case No. 3:24-CV-71

---

## APPELLANT'S BRIEF

---

Robert M. Millimet
Jennifer S. Richards
**RICHARDS LAW PLLC**
6125 Luther Lane, No. 301
Dallas, Texas 75225

William A. Cohan
Gabriel L. Cohan
**WILLIAM A. COHAN, P.C.**
2888 Loker Avenue E, Suite 202
Carlsbad, California 92010

Reece Rondon
Jeffrey T. Bentch
**HALL MAINES LUGRIN, P.C.**
Williams Tower, 64th Floor
2800 Post Oak Boulevard
Houston, Texas 77056-6125

John D. O'Connor
**O'CONNOR AND ASSOCIATES**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111

**ATTORNEYS FOR PLAINTIFF – APPELLANT
ENVTECH, INCORPORATED**

## **CERTIFICATE OF INTERESTED PERSONS**

Appellant certifies that the following listed persons and entities as described in Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1.  **Plaintiff - Appellant**

    EnvTech, Incorporated

2.  **Defendant - Appellee**

    Patrick Andrew DeBusk

3.  **RICO Enterprise**

    USA DeBusk LLC

4.  **Non-Party Co-Conspirators**

    Paul Rowland Taylor II

    Richard V. Rutherford

    Dudley Hughes

5.  **Counsel for Plaintiff - Appellant**

    Robert M. Millimet and Jennifer S. Richards; Richards Law PLLC

    Reece Rondon and Jeffrey T. Bentch; Hall Maines Lugrin, P.C.

    William A. Cohan and Gabriel L. Cohan; William A. Cohan, P.C.

    John D. O'Connor; O'Connor and Associates

6.    **<u>Counsel for Defendant - Appellee</u>**

Kenneth D. Hughes; Ken Hughes PLLC

Jonathan S. Franklin, Warren S. Huang, M. Carter Crow, and Kevin

Lie; Norton Rose Fulbright US LLP


*/s/ Robert M. Millimet*
**ROBERT M. MILLIMET**
**Attorney of record for Appellant**
**EnvTech, Incorporated**

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiff – Appellant EnvTech, Incorporated ("EnvTech") requests oral argument to significantly aid the Court's decisional process in this case. In particular, EnvTech believes that oral argument would assist the Court's understanding of the legal issues involved in light of EnvTech's extensive factual allegations, which are based on several other state court lawsuits, including discovery (and a recent favorable jury verdict for EnvTech) obtained in a related Texas state court lawsuit.

# <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

CERTIFICATE OF INTERESTED PERSONS ...........................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

TABLE OF CONTENTS..............................................................................iv

TABLE OF AUTHORITIES ........................................................................ v

JURISDICTIONAL STATEMENT .............................................................. 1

ISSUES PRESENTED................................................................................2

STATEMENT OF THE CASE......................................................................3

STATEMENT OF FACTS ...........................................................................4

   A. DeBusk Personally Directed And Supported USAD's Intentional Theft Of EnvTech's Trade Secret. ...............................................................4

   B. DeBusk Is Personally Involved In USAD's Intentional Theft Of Other Competitors' Trade Secrets. ......................................................10

SUMMARY OF ARGUMENTS...................................................................12

STANDARD OF REVIEW ........................................................................13

ARGUMENT AND AUTHORITIES...........................................................14

   A. EnvTech More Than Plausibly Alleged That DeBusk Knowingly And Intentionally Stole EnvTech's Trade Secret. ..............................15

      1. Applicable legal standards.......................................................15

      2. DeBusk personally directed and supported USAD's intentional theft of EnvTech's trade secret. ........................................15

         a. It is facially plausible that DeBusk had the requisite mental state to violate 18 U.S.C. § 1832(a)(1) or (3). ................................16

         b. It is facially plausible that DeBusk had the requisite mental state to violate 18 U.S.C. § 1832(a)(5). ........................................21

   B. EnvTech More Than Plausibly Alleged A "Pattern Of Racketeering Activity" By DeBusk....................................................................23

   C. EnvTech More Than Plausibly Alleged "Open-Ended Continuity".............26

CONCLUSION ........................................................................................28

CERTIFICATE OF SERVICE ...................................................................30

CERTIFICATE OF COMPLIANCE............................................................31

# <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

CASES

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................14, 23

*Bartlett v. Bartlett*,
   No. 3:17-cv-00037-JPG-SCW, 2017 WL 5499403
   (S.D. Ill. Nov. 16, 2017) ...............................................................20, 28

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................14

*CrossBorder Solutions, Inc. v. Macias, Gini, & O'Connell, LLP*,
   No. 20 Civ. 4877 (NSR), 2022 WL 562934
   (S.D.N.Y. Feb. 23, 2022)...............................................................20

*D&T Partners, L.L.C. v. Baymark Partners Mgmt., L.L.C.*,
   98 F.4th 198 (5th Cir. 2024). ..........................................14, 26, 27, 28

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011)..................................................................17, 22

*Huntingdon Life Scis., Inc. v. Rokke*,
   986 F. Supp. 982 (E.D.Va. 1997) ......................................................25

*Magnesita Refractories Co. v. Tianjin New Century Refractories Co.*,
   No. 1:17-CV-1587, 2019 WL 1003623 (M.D.Pa. Feb. 28, 2019).....................14

*Norris v. Hearst Trust*,
   500 F.3d 454 (5th Cir. 2007) ........................................................4, 10

*Randall D. Wolcott, M.D., P.A. v. Sebelius*,
   635 F.3d 757 (5th Cir. 2011) ............................................................14

*Stem v. Gomez*,
   813 F.3d 205 (5th Cir. 2016) ......................................................14, 23

*True v. Robles*,
   571 F.3d 412 (5th Cir. 2009). .....................................................13, 23

*United States v. Hunter*,
    628 F. App'x 904 (5th Cir. 2015) ...............................................17, 22

*United States v. Liu*,
    716 F.3d 159 (5th Cir. 2013) ......................................................15, 22

*United States v. Martin*,
    228 F.3d 1 (1st Cir. 2000)................................................................16

*United States v. Shi*,
    991 F.3d 198 (D.C. Cir. 2021) ........................................................22

STATUTES

18 U.S.C. § 1832 ...............................................................................*passim*

18 U.S.C. § 1961(1)(B) .........................................................................14

18 U.S.C. § 1962(c) ..............................................................................25

28 U.S.C. § 1291 ....................................................................................1

Tex. Civ. Prac. & Rem. Code § 134A.002(2)........................................25

Tex. Civ. Prac. & Rem. Code § 134A.002(3)(A) ..................................25

OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6)................................................................1, 13, 14

*Protecting Trade Secrets: the Impact of Trade Secret Theft on American
    Competitiveness and Potential Solutions to Remedy This Harm Before the
    S. Comm. on the Judiciary*, 114th Cong. (2015). ..............................14

## <u>JURISDICTIONAL STATEMENT</u>

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. On April 24, 2025, the District Court entered both its order granting the motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by Defendant – Appellee Patrick Andrew DeBusk ("DeBusk"),[1] and its final judgment of dismissal with prejudice.[2] On April 28, 2025, EnvTech timely filed its notice of appeal.[3]

---

[1] ROA.540.
[2] ROA.541.
[3] ROA.542-544.

## ISSUES PRESENTED

This appeal concerns the District Court's dismissal with prejudice of EnvTech's first amended complaint against DeBusk for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO")—even though DeBusk conducted the affairs of a RICO enterprise (*i.e.*, the company DeBusk founded and controls, USA DeBusk LLC ("USAD")) through a "pattern of racketeering activity" (*i.e.*, the repeated theft of trade secrets from multiple USAD competitors). Specifically, this appeal concerns the three grounds on which DeBusk relied in the District Court to show that EnvTech purportedly failed to plead even a facially plausible RICO claim against him.

1.     Did EnvTech more than plausibly allege that DeBusk had the requisite mental state to be liable for the theft of EnvTech's trade secret?

2.     Did EnvTech more than plausibly allege that DeBusk engaged in a "pattern of racketeering activity" through USAD's intentional theft of multiple competitors' trade secrets?

3.     Did EnvTech more than plausibly allege the existence of "open-ended continuity" based on multiple and related schemes and victims, and future opportunities for more potential victims?

## **STATEMENT OF THE CASE**

EnvTech appeals the District Court's dismissal with prejudice of its RICO claim against DeBusk.[4] The District Court dismissed EnvTech's original complaint without prejudice and granted EnvTech leave to amend.[5] The District Court concluded that: (i) EnvTech alleged that USAD hired two former EnvTech employees who misappropriated or used without authorization EnvTech's trade secret, but did not sufficiently allege that "DeBusk knowingly intended to engage in theft of trade secrets;"[6] and (ii) EnvTech's reliance on four other lawsuits against USAD and/or DeBusk involving claims for civil trade secret misappropriation was insufficient to allege the RICO predicate act of theft of trade secrets under 18 U.S.C. § 1832.[7]

EnvTech's first amended complaint included over 50 additional factual allegations demonstrating DeBusk's personal and knowing participation in USAD's intentional theft of trade secrets from EnvTech and three other USAD competitors.[8] Nonetheless, DeBusk repeated his prior contentions, plus added the contention that EnvTech could not establish the RICO continuity requirement.[9]

On April 24, 2025, the District Court issued a one-paragraph order granting

---

[4] ROA.540-544.
[5] ROA.337-343.
[6] ROA.340-341.
[7] ROA.341-343.
[8] ROA.344-390; ROA.422-423; ROA.454-511.
[9] ROA.391-417.

DeBusk's motion to dismiss EnvTech's first amended complaint, concluding simply that "the amended complaint suffers from the same deficiencies as the original complaint,"[10] and then separately entered its final judgment dismissing EnvTech's RICO claim with prejudice.[11] The very next day—April 25, 2025—a 12-person jury returned its Texas state court verdict unanimously finding that USAD willfully and maliciously misappropriated EnvTech's trade secret through its "conscious disregard of the rights of [EnvTech as] the owner of the trade secret."[12] On April 28, 2025, EnvTech timely filed its notice of appeal.[13]

## STATEMENT OF FACTS

### A.   DeBusk Personally Directed And Supported USAD's Intentional Theft Of EnvTech's Trade Secret.

EnvTech's trade secret is a proprietary one-step neutral pH chelation chemical cleaning formula for hydrofluoric alkylation ("HF alky") units in oil refineries.[14] EnvTech's trade secret is a much safer, more efficient and faster, and more environmentally-friendly cleaning process than the traditional hydrochloric acid and citric acid cleaning processes it has largely displaced.[15] As a result, EnvTech

---

[10] ROA.540.

[11] ROA.541.

[12] *See* Appellant's Motion to Take Judicial Notice dated June 24, 2025 ("Motion"), Exhibit A. This Court should take judicial notice of that jury verdict. *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").

[13] ROA.542-544.

[14] ROA.345 [¶ 3].

[15] ROA.349; [¶ 16]; ROA.351-354 [¶¶ 23-27].

controls approximately 80% of the western world market for neutralizing and cleaning HF alky units.[16] Indeed, for over 20 years until USAD stole EnvTech's trade secret, EnvTech was the only provider of neutral pH chelation chemical cleanings for HF alky units.[17]

EnvTech developed its trade secret through inspiration, innovation, years of trial and error, and continuing research and development—at significant risk and expense to EnvTech. Due to the chemical, physical, and hydraulic variables and extremely dangerous hydrofluoric acid inside HF alky units, only small independent and foreign refineries were initially willing to allow EnvTech to apply, adjust, improve, and demonstrate its developing methodology.[18]

Prior to its theft of EnvTech's trade secret, USAD had never performed a neutral pH chelation chemical cleaning of an HF alky unit.[19] But after stealing EnvTech's trade secret through its employment of two former EnvTech key employees with knowledge of the trade secret, USAD was able to perform its first-ever neutral pH chelation chemical cleanings—without conducting a single test of its newly-created industrial chemical products, and while simultaneously convincing EnvTech's former customers that USAD's neutral pH chelation chemical cleaning

---

[16] ROA.354 [¶ 28].
[17] ROA.351 [¶ 22].
[18] ROA.349-350 [¶¶ 17-20].
[19] ROA.345 [¶ 3]; ROA.355 [¶ 30].

process was safe and well tested for decades (by EnvTech, not USAD, which was a fact USAD conveniently omitted).[20] As a result, USAD, and not EnvTech, obtained the significant fees associated with two jobs: (i) at a refinery owned by Flint Hills Resources ("FHR") located in Corpus Christi, Texas (the "FHR Refinery"); and (ii) at a refinery owned by PBF Energy ("PBF") located in Torrance, California (the "PBF Refinery").[21]

Based on documents and deposition testimony obtained by EnvTech in discovery in its related Texas state court lawsuit against USAD and non-party co-conspirator Paul Taylor,[22] EnvTech's first amended complaint alleges the following facts concerning DeBusk's personal and knowing participation in, and direction and support of, USAD's intentional theft of EnvTech's trade secret:[23]

- Beginning in mid-2019, Taylor conducted an internal USAD campaign to convince DeBusk to overcome DeBusk's prior two bad experiences and pursue lucrative whole unit cleanings of HF alky units;[24]

---

[20] ROA.345-3461 [¶ 3].
[21] ROA.346 [¶ 3]; ROA.361-365 [¶¶ 49, 59].
[22] ROA.354-355 [¶¶ 29-30]; ROA.359 [¶ 41].
[23] Again, a 12-person jury in EnvTech's Texas state court lawsuit against USAD unanimously determined—after hearing all the evidence—that EnvTech possessed a protectible trade secret which USAD willfully and maliciously misappropriated. *See* Motion, Exhibit A.
[24] ROA.355-360 [¶¶ 32, 36-40, 42-44].

- In July 2019, Taylor—who learned EnvTech's trade secret as a former EnvTech part owner, and knew EnvTech considered its neutral pH chelation chemical cleaning formula to be confidential and proprietary information[25]—sent a "smoking gun" email to non-party co-conspirator Dudley Hughes, USAD's Vice President of Technical Sales,[26] stating: "I would like to suggest we set up a meeting ... and confirm if we want to seriously pursue HF ... Alky Units for both mechanical and chem cleaning services.... ***I know the EnvTech chemistry and helped to develop it so it is another potential product for us to sell and use if we go that route***...." (Emphasis added);[27]

- Before performing the FHR and PBF Refinery jobs in 2021 and 2022, respectively, USAD had never performed one-step neutral pH chelation chemical cleanings of HF alky units, and EnvTech had no competitors that performed such cleanings (as further demonstrated by FHR's and PBF's representatives admitting at their depositions that they turned to USAD after EnvTech was purportedly unavailable because USAD was the only other known provider of such cleanings besides EnvTech);[28]

- DeBusk himself knew that Taylor and non-party co-conspirator Richard Rutherford were former EnvTech employees and, as a result, the only two USAD employees with knowledge of how to perform one-step neutral pH chelation chemical cleanings of HF alky units,[29] yet DeBusk also knew that USAD was marketing Taylor's and Rutherford's experience and knowledge of EnvTech's trade secret as its own[30]—indeed, DeBusk further knew USAD "did use some of the same chemistry or same technology that EnvTech uses or has used" when it performed neutral pH chelation chemical cleanings of the HF alky units at the PBF and FHR Refineries;[31]

---

[25] ROA.347 [¶ 8]; ROA.356 [¶¶ 33-34]; ROA.371 [¶¶ 77-78].
[26] ROA.347 [¶ 10].
[27] ROA.358-359 [¶ 40].
[28] ROA.345 [¶ 3]; ROA.354-355 [¶ 29-30]; ROA.368-370 [¶¶ 68, 72].
[29] ROA.356 [¶ 33]; ROA.361-364 [¶¶ 49, 54]; ROA.371-373 [¶ 79].
[30] ROA.363-365 [¶¶ 54, 56].
[31] ROA.371 [¶ 75].

- DeBusk "pushed" USAD to: (i) create a safety program for neutral pH chelation chemical cleanings of HF alky units, which resulted in Taylor using his knowledge of EnvTech's trade secret to duplicate USAD's chemical blends and resulting safety data sheets—which used the very same chemicals, with very similar ratios, as EnvTech's trade secret chemical formula—with no testing or experimentation;[32] and (ii) have its salespersons get Taylor in front of owners of HF alky units so USAD could acquire new business, which resulted in USAD marketing its ability to perform one-step neutral pH chelation chemical cleanings of HF alky units to numerous potential customers so USAD could become "a top Alky contractor;"[33]

- DeBusk was personally informed by Hughes that PBF wanted to start planning the chemical cleaning of its HF alky unit, so Taylor and Rutherford needed to visit the PBF Refinery as soon as possible "to get the chem locked up before somebody else gets to them,"[34] and Hughes knew that Taylor possessed knowledge of EnvTech's trade secret;[35]

- DeBusk personally attended the in-person meeting at the PBF Refinery in California at which USAD learned that PBF was seeking to outsource the cleaning of its HF alky unit for the very first time and requesting a neutral pH chelation chemical cleaning, and USAD stated that it could perform the neutral pH chelation chemical cleaning by highlighting Taylor's and Rutherford's prior EnvTech experience and knowledge of EnvTech's trade secret as its own to convince PBF to hire USAD instead of EnvTech;[36]

---

[32] ROA.360-365 [¶¶ 44-46].
[33] ROA.365-367 [¶¶ 58, 60-63].
[34] ROA.363 [¶ 52].
[35] ROA.358-359 [¶ 40].
[36] ROA.362-364 [¶¶ 50-51, 53-54].

- After PBF selected USAD to perform a one-step neutral pH chelation chemical cleaning of its HF alky unit, Taylor wrote to DeBusk: "Looks like it is one of those situations that you have to be careful what you ask for (if we don't want to do HF Alky units).... Obviously they want ... to begin the planning phase. If there is any turning back, now is the time to make that call." DeBusk immediately responded by email, stating: "Sweet;"[37]

- In December 2020, after Taylor updated DeBusk on new and potential HF alky unit business, including the lucrative fees to be earned from the upcoming FHR and PBF Refinery jobs, DeBusk personally directed Taylor to prepare "an excel spreadsheet [identifying HF alky unit cleaning jobs] with the current year and 3 year look ahead;"[38]

- In January 2021, after EnvTech sued USAD and Taylor in Texas state court and before USAD performed the FHR and PBF Refinery jobs, DeBusk personally directed an internal USAD inquiry into whether one-step neutral pH chelation chemical cleanings of HF alky units was "an industry secret," stating it "would be huge" if it was not; and subsequent discovery in the Texas state court lawsuit confirmed there were no fact witnesses who could support USAD's defense that the one-step neutral pH chelation chemical cleaning of an HF alky unit is purportedly not a trade secret owned by EnvTech, yet DeBusk still subsequently directed, supported, and approved USAD performing the FHR and PBF Refinery jobs;[39] and

- As DeBusk admitted at his deposition, he personally directed USAD to use the knowledge and experience of Taylor and Rutherford with EnvTech's neutral pH chelation chemical cleaning formula to pursue HF alky unit cleaning business. Of course, based on their communications with Taylor from approximately mid-2019 through early 2020, both DeBusk and Hughes knew, or at best were willfully blind to the fact, that EnvTech's neutral pH chelation chemical cleaning formula for HF alky units was an EnvTech trade secret.[40]

---

[37] ROA.364 [¶ 55].
[38] ROA.366-367 [¶ 62].
[39] ROA.367-373 [¶¶ 64-79].
[40] ROA.370 [¶ 74].

On April 25, 2025, a 12-person jury in the related Texas state court lawsuit unanimously found that EnvTech owns a trade secret, USAD misappropriated that trade secret, and USAD was liable for lost profits damages. The unanimous jury also found, *by clear and convincing evidence*, that USAD willfully and maliciously misappropriated the trade secret, entitling EnvTech to exemplary damages and attorneys' fees.[41] The jury charge, in accordance with Texas law, defined "willful and malicious misappropriation" as "***intentional*** misappropriation resulting from the ***conscious disregard*** of the rights of the owner of the trade secret."[42] Again, this Court should take judicial notice of that jury verdict.[43]

## B.   DeBusk Is Personally Involved In USAD's Intentional Theft Of Other Competitors' Trade Secrets.

EnvTech's first amended complaint also alleges that USAD and/or DeBusk were parties to four other lawsuits similarly involving claims for trade secret misappropriation based on USAD's *modus operandi* of stealing its competitors' trade secrets by hiring away their key employees.[44] For example, Refined Technologies, Inc. ("RTI") alleged that USAD acquired RTI's trade secrets "by theft" and through willful and malicious misappropriation,[45] and "Farr Front" alleged that USAD hired two key employees (one of whom was Troy Harrison) to

---

[41] *See* Motion, Exhibit A.
[42] *Id.* (Emphasis added.)
[43] *Norris*, 500 F.3d at 461 n.9.
[44] ROA.345 [¶ 2]; ROA.374 [¶ 83].
[45] ROA.374-376 [¶¶ 84-90].

"steal" Farr Front's business through willful and malicious misappropriation of its trade secrets.[46]

DeBusk admitted at his deposition that he was personally involved in USAD's hiring of those two key Farr Front employees, Harrison took at least 3,547 files from his Farr Front computer when he left Farr Front to work for USAD, and more than ninety-five percent (95%) of those files contained Farr Front's confidential and proprietary information and trade secrets.[47] Mere weeks after an evidentiary hearing on Farr Front's request for a temporary injunction, USAD and Farr Front settled their litigation and, shortly thereafter, USAD agreed to acquire Farr Front.[48] Tellingly, DeBusk also admitted at his deposition that even though USAD's litigation with Farr Front resulted in an "unfavorable outcome," no discipline or other adverse action was imposed by USAD against Harrison—which is not surprising because Harrison acted at DeBusk's direction and with DeBusk's express approval so USAD could steal and benefit from Farr Front's trade secrets.[49]

The other two lawsuits also involved DeBusk's personal participation in hiring key employees from USAD's competitor "HydroChem" to gain illegal access to its trade secrets.[50] One lawsuit alleged that USAD was attempting "to steal"

---

[46] ROA.376-380 [¶¶ 91-100].
[47] ROA.377-378 [¶¶ 92-94].
[48] ROA.380 [¶ 99].
[49] ROA.380 [¶ 100].
[50] ROA.380-383 [¶¶ 101-108].

HydroChem's confidential business information,[51] and the other lawsuit alleged that the former HydroChem employee "cop[ied] his HydroChem computer to one or more storage devices, and then [took] the storage devices with him.... HydroChem attempted to work cooperatively with [USAD] ... to retrieve its property. But [USAD] and Martin have not returned it ...."[52] Both lawsuits further alleged that USAD acquired HydroChem's trade secrets "through improper means."[53]

## SUMMARY OF ARGUMENTS

The District Court erred by concluding that EnvTech's first amended complaint fails to state even a facially plausible RICO claim against DeBusk—especially given that EnvTech's allegations must be taken as true and examined in the light most favorable to EnvTech.

First, EnvTech more than plausibly alleged that DeBusk intended to steal EnvTech's trade secret for the financial benefit of USAD. EnvTech's first amended complaint demonstrates in extensive detail that DeBusk personally directed, supported, and approved USAD's intentional use of EnvTech's trade secret without EnvTech's authorization so USAD could obtain lucrative new business that otherwise would have gone to EnvTech.

Second, EnvTech more than plausibly alleged a "pattern of racketeering

---

[51] ROA.382 [¶ 104].
[52] ROA.382 [¶ 105].
[53] ROA.382 [¶ 106].

activity" based on four other lawsuits in which three other USAD competitors sued USAD and/or DeBusk for misappropriating their trade secrets. Those lawsuits alleged thefts of trade secrets by USAD and/or DeBusk from additional victims besides EnvTech, thereby demonstrating a more than plausible "pattern" and entitling EnvTech to pursue discovery. Indeed, Texas law—on which those four lawsuits were based—recognizes that "theft" is a ground for finding trade secret misappropriation.

Third, EnvTech more than plausibly alleged "open-ended continuity" because the four other lawsuits, plus EnvTech's own Texas state court lawsuit, reflect DeBusk's personal involvement in USAD's *modus operandi* of hiring its competitors' key employees to steal their trade secrets. Those lawsuits and that *modus operandi* demonstrate multiple and related schemes and victims, and future opportunities to steal other competitors' trade secrets.

## STANDARD OF REVIEW

This Court reviews *de novo* the District Court's grant of DeBusk's Rule 12(b)(6) motion to dismiss, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to [EnvTech]."[54] EnvTech must prevail on DeBusk's Rule 12(b)(6) motion if it pleaded "enough facts to state a claim for relief

---

[54] *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009).

that is plausible on its face."[55] "'A claim has facial plausibility when the ... [complaint's] factual content ... allows the court to draw the reasonable inference that the defendant is liable.'"[56] "Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[57]

## <u>ARGUMENT AND AUTHORITIES</u>

As this Court has recognized, "RICO is also more than a criminal statute. When drafting the legislation, Congress incorporated provisions in RICO that allow private plaintiffs to seek redress in federal court."[58] In 2016, in light of the significant impact on American competitiveness,[59] Congress expanded RICO to include theft of trade secrets under 18 U.S.C. § 1832 as a RICO predicate act.[60]

---

[55] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[56] *Stem v. Gomez*, 813 F.3d 205, 209 (5th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); brackets and ellipses in original).

[57] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal quotations and citation omitted).

[58] *D&T Partners, L.L.C. v. Baymark Partners Mgmt., L.L.C.*, 98 F.4th 198, 204 (5th Cir. 2024).

[59] *See generally, e.g., Protecting Trade Secrets: The Impact of Trade Secret Theft on American Competitiveness and Potential Solutions to Remedy This Harm Before the S. Comm. on the Judiciary*, 114th Cong. (2015).

[60] 18 U.S.C. § 1961(1)(B); *Magnesita Refractories Co. v. Tianjin New Century Refractories Co.*, No. 1:17-CV-1587, 2019 WL 1003623, at *10 (M.D.Pa. Feb. 28, 2019).

**A.**    **EnvTech More Than Plausibly Alleged That DeBusk Knowingly And Intentionally Stole EnvTech's Trade Secret.**

    **1.**    **Applicable legal standards**

There are five essential elements of a claim for theft of trade secrets under 18 U.S.C. § 1832(a), but only the following three are relevant here:

- "the defendant intended to convert proprietary information to the economic benefit of anyone other than the owner;"

- "the defendant knowingly stole, copied, or received trade secret information [or conspired with one or more persons to do so];" and

- "the defendant intended or knew the offense would injure the owner of the trade secret."[61]

For a conspiracy to steal trade secrets under 18 U.S.C. § 1832(a)(5), the relevant inquiry is, "did the defendant believe that the information he conspired to obtain was proprietary and was being taken for the economic benefit of someone other than the owner?"[62]

    **2.**    **DeBusk personally directed and supported USAD's intentional theft of EnvTech's trade secret.**

The District Court dismissed EnvTech's first amended complaint because it erroneously concluded that EnvTech did not plead facts plausibly demonstrating that DeBusk knew Taylor and Rutherford were using proprietary information owned by

---

[61] ROA.340 (citing 18 U.S.C. § 1832; *United States v. Liu*, 716 F.3d 159, 169-70 (5th Cir. 2013)). The other two elements not at issue in this appeal are: "the proprietary information was a trade secret;" and "the trade secret was included in a product that is placed in interstate commerce." ROA.340 (citing 18 U.S.C. § 1832; *Liu*, 716 F.3d at 169-70).

[62] *Liu*, 716 F.3d at 170.

EnvTech for the benefit of USAD and to the financial detriment of EnvTech. As EnvTech alleges in its first amended complaint and as the jury verdict against USAD in the related Texas state court lawsuit confirms, USAD willfully and maliciously misappropriated EnvTech's trade secret through its employment of Taylor and Rutherford, damaging EnvTech.

In particular, EnvTech's first amended complaint contains extensive factual allegations demonstrating that DeBusk personally directed, supported, and approved USAD's intentional use of EnvTech's trade secret without EnvTech's authorization so USAD could obtain lucrative new business that otherwise would have gone to EnvTech. Thus, EnvTech has more than plausibly alleged that DeBusk violated 18 U.S.C. § 1832(a) because that statute was "designed to prevent those [direct-competitor former] employees (and their future employers) from taking advantage of confidential information gained ... or taken while employed elsewhere."[63]

### a.     It is facially plausible that DeBusk had the requisite mental state to violate 18 U.S.C. § 1832(a)(1) or (3).

EnvTech's first amended complaint alleges that DeBusk knowingly directed USAD to use the knowledge and experience of Taylor and Rutherford with EnvTech's trade secret to pursue and perform one-step neutral pH chelation chemical cleanings of HF alky units as a source of new, lucrative business for

---

[63] *United States v. Martin*, 228 F.3d 1, 11 (1st Cir. 2000).

USAD.[64] Of course, based on their communications with Taylor, both DeBusk and Hughes knew, or at best were willfully blind to the fact, that EnvTech's one-step neutral pH chelation chemical cleaning formula for HF alky units was an EnvTech trade secret.[65] Indeed, FHR's and PBF's representatives admitted at their depositions that they turned to USAD after EnvTech was purportedly unavailable due to the Covid-19 pandemic because USAD was the only other known provider of a one-step neutral pH chelation chemical cleaning process for HF alky units.[66]

In particular, in July 2019, Taylor told Hughes that "I know the EnvTech chemistry and helped to develop it so it is another potential product for us to sell and use if we go that route…."[67] With that (and other similar) knowledge,[68] Hughes, in February 2020, informed DeBusk that Taylor and Rutherford needed to visit the PBF Refinery as soon as possible "to get the chem locked up before somebody else gets to them."[69]

Thereafter, DeBusk personally attended the in-person meeting at the PBF

---

[64] ROA.346 [¶ 4]; ROA.370 [¶ 74].

[65] ROA. 370 [¶ 74]; *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) ("The doctrine of willful blindness is well established in criminal law…. [P]ersons who know enough to blind themselves to direct proof of critical facts in effect have actual knowledge of those facts."); *United States v. Hunter*, 628 F. App'x 904, 906-07 (5th Cir. 2015) ("We have held that the Fifth Circuit Pattern Instruction on willful blindness is a correct statement of the law as enunciated by the Supreme Court in *Global-Tech Appliances* ….") (citations omitted).

[66] ROA.368-369 [¶ 68].

[67] ROA.358-359 [¶ 40].

[68] ROA.357-360 [¶¶ 36-38, 42-43]; ROA.362 [¶ 50].

[69] ROA.363 [¶ 52].

Refinery at which USAD stated that it could perform PBF's requested neutral pH chelation chemical cleaning by highlighting Taylor's and Rutherford's prior experience with, and knowledge of, EnvTech's trade secret—which Taylor and Rutherford obtained solely as a result of their prior EnvTech employment—to convince PBF to hire USAD instead of EnvTech.[70] Indeed, after PBF selected USAD to clean its HF alky unit, Taylor wrote to DeBusk: "Looks like it is one of those situations that you have to be careful what you ask for (if we don't want to do HF Alky units).... If there is any turning back, now is the time to make that call." DeBusk promptly responded with one word: "Sweet."[71] Thus, these factual allegations more than plausibly demonstrate that DeBusk knowingly directed USAD to use Taylor's and Rutherford's knowledge of EnvTech's trade secret to pursue new lucrative business for USAD.

This intentional direction from DeBusk for USAD to proceed with the theft of EnvTech's trade secret is further demonstrated by EnvTech's factual allegations that DeBusk knew that USAD: (i) was marketing Taylor's and Rutherford's experience and knowledge with EnvTech's trade secret as USAD's own experience and knowledge not only to FHR and PBF, but also to numerous other HF alky unit owners;[72] and (ii) "did use some of the same chemistry or same technology that

---

[70] ROA.383-383 [¶¶ 53-54].
[71] ROA.364 [¶ 55].
[72] ROA.363-365 [¶¶ 54, 56].

EnvTech uses or has used" when it performed one-step neutral pH chelation chemical cleanings of the HF alky units at the PBF and FHR Refineries.[73] In fact, after DeBusk "pushed" USAD to pursue whole unit cleanings of HF alky units—including one-step neutral pH chelation chemical cleanings of HF alky units—by getting Taylor in front of HF alky unit owners,[74] USAD thereafter performed no testing or experimentation, but instead used Taylor's knowledge of EnvTech's trade secret, to derive USAD's competing chemical blends and resulting safety data sheets—which used the very same chemicals, with very similar ratios, as EnvTech's trade secret chemical formula.[75]

In December 2020, after Taylor provided DeBusk with an update on new and potential HF alky unit business, including the lucrative fees to be earned from the upcoming FHR and PBF Refinery jobs, DeBusk personally directed Taylor to prepare "an excel spreadsheet [identifying HF alky unit cleaning jobs] with the current year and 3 year look ahead."[76] In January 2021, DeBusk sought to make USAD "a top Alky contractor," notwithstanding EnvTech's Texas state court lawsuit.[77] Indeed, after EnvTech sued USAD, DeBusk personally directed an internal USAD inquiry into whether one-step neutral pH chelation chemical

---

[73] ROA.371 [¶ 75].
[74] ROA.365-366 [¶¶ 58, 60-61].
[75] ROA.360-361 [¶¶ 44-46].
[76] ROA.366-367 [¶ 62].
[77] ROA.367 [¶ 63].

cleanings of HF alky units was "an industry secret" and said it "would be huge" if it was not.[78] Although subsequent discovery in the Texas state court lawsuit confirmed there were no fact witnesses who could deny that EnvTech owned a trade secret, DeBusk still subsequently directed, supported, and approved USAD performing the FHR and PBF Refinery jobs.[79]

In *toto*, all the foregoing factual allegations are more than sufficient to support the reasonable inference that DeBusk is liable for theft of EnvTech's trade secret under 18 U.S.C. § 1832(a)(1) or (3) because: (i) he knowingly directed USAD to convert and use without EnvTech's authorization EnvTech's trade secret—which USAD obtained through its employment of Taylor and Rutherford—for the economic benefit of USAD; and (ii) he knew that USAD's use of EnvTech's trade secret to perform the PBF and FHR Refinery jobs would result in USAD, and not EnvTech, performing those jobs.[80] The District Court, therefore, erred in dismissing

---

[78] ROA.367-368 [¶¶ 64-66].

[79] ROA.368-370 [¶¶ 67, 72]; ROA.355-356 [¶¶ 32-33]; ROA.371-372 [¶ 79].

[80] *CrossBorder Solutions, Inc. v. Macias, Gini, & O'Connell, LLP*, No. 20 Civ. 4877 (NSR), 2022 WL 562934, at *8 (S.D.N.Y. Feb. 23, 2022) ("[T]he PSAC also sufficiently pleads the RICO predicate act of theft of trade secrets.... [T]he PSAC alleges that the Former Employees stole 'CrossBorder's trade secrets for [] MGO and Agarwal's gain, without regard to CrossBorder's rights, and without compensation, permission, or license from CrossBorder,' ... [a]nd ... 'Agarwal and MGO had knowledge of, and indeed encouraged and facilitated, the Former Employees' misappropriation of CrossBorder trade secrets and confidential and proprietary information, thereafter utilizing such information to solicit CrossBorder's clients.'") (internal citations omitted); *Bartlett v. Bartlett*, No. 3:17-cv-00037-JPG-SCW, 2017 WL 5499403, at *6 (S.D. Ill. Nov. 16, 2017) ("The [RICO] complaint also repeatedly asserts that the defendants intended to convert the trade secrets for their own personal gain and to the detriment of Mark. This is enough to satisfy the *Twombly* pleading standards.") (internal citation omitted).

EnvTech's RICO claim against DeBusk based on its incorrect conclusion that EnvTech did not plausibly allege that "DeBusk knowingly intended to engage in theft of" EnvTech's trade secret.

### b. It is facially plausible that DeBusk had the requisite mental state to violate 18 U.S.C. § 1832(a)(5).

EnvTech's first amended complaint also alleges a more than plausible criminal conspiracy between DeBusk and others to steal EnvTech's trade secret in violation of 18 U.S.C. § 1832(a)(5). That statute makes it a crime to conspire with others to steal trade secrets "and one or more of such persons do any act to effect the object of the conspiracy."

As previously discussed, EnvTech has more than plausibly alleged that DeBusk conspired to convert EnvTech's trade secret for the economic benefit of USAD, and that overt actions were taken by Taylor, Rutherford, and Hughes to effectuate that conspiracy. In particular, EnvTech alleges that DeBusk's direction, support, and approval were required for USAD to pursue whole unit cleanings of HF alky units, including one-step neutral pH chelation chemical cleanings,[81] and DeBusk knew or was at worst willfully blind to the fact that USAD was only capable of performing one-step neutral pH chelation chemical cleanings of HF alky units

---

[81] ROA.355-356 [¶¶ 32-33]; ROA.371-372 [¶ 79].

because USAD employed Taylor and Rutherford and used their knowledge of EnvTech's trade secret for the economic benefit of USAD.[82]

Indeed, in stark contrast to EnvTech's development of its trade secret over the course of a decade, USAD performed *no* testing or experimentation of its competing chemical blends and cleaning process—which used the very same chemicals, with very similar ratios, as EnvTech's trade secret chemical formula—before performing the FHR and PBF Refinery jobs.[83] Thus, these factual allegations alone (*i.e.*, even without considering the extensive additional factual allegations concerning DeBusk's personal knowledge and involvement discussed in connection with his liability under 18 U.S.C. § 1832(a)(1) or (3)) are more than sufficient to give rise to the reasonable inference that DeBusk conspired with Taylor, Rutherford, and Hughes to steal EnvTech's trade secret.[84]

The District Court, therefore, erred in dismissing EnvTech's RICO claim against DeBusk based on its incorrect conclusion that EnvTech did not plausibly

---

[82] ROA.370 [¶ 74]; *Global-Tech Appliances, Inc.*, 563 U.S. at 766; *Hunter*, 628 F. App'x at 906-07.

[83] ROA.349-350 [¶¶ 17-20]; ROA.369 [¶ 71].

[84] *United States v. Shi*, 991 F.3d 198, 207 (D.C. Cir. 2021) ("We hold ... a rational juror could find that Shi entered into a tacit agreement to manufacture DRBMs using stolen trade secrets.... Ogoe also testified that he was 'told to replicate what Trelleborg was making,' and that Shi 'hired me to get information from [Trelleborg]—because there's nowhere else I can get information.' ... The jury also heard testimony giving rise to an inference that Shi knowingly participated in the conspiracy after hiring Ogoe and Liu.") (internal citations omitted); *Liu*, 716 F.3d at 172-73 (affirming conviction under 18 U.S.C. § 1832(a)(5) because "Liou's defense theory was that he did not steal any Dow technology .... Liou was faced with the formidable task of overcoming the testimony of the former and then-current Dow employees who testified that Liou paid them hundreds of thousands of dollars to obtain the details of Dow's process.").

allege that "DeBusk knowingly intended to engage in theft of" EnvTech's trade secret.

## B.     EnvTech More Than Plausibly Alleged A "Pattern Of Racketeering Activity" By DeBusk.

The District Court erroneously concluded that EnvTech cannot plausibly allege a "pattern of racketeering activity" because DeBusk's other alleged RICO predicate acts are based on four other lawsuits in which three other USAD competitors sued USAD and/or DeBusk for civil trade secret misappropriation rather than for criminal theft of trade secrets under 18 U.S.C. § 1832. The District Court erred by not "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to [EnvTech],"[85] and by failing to determine that EnvTech's alleged "'factual content ... allows the court to draw the reasonable inference that [DeBusk] is liable.'"[86]

Initially, it is unsurprising that those four other *civil* lawsuits involved only claims for trade secret misappropriation—after all, civil plaintiffs lack a private cause of action under 18 U.S.C. § 1832 (except through RICO), as DeBusk recognized in the District Court.[87] Regardless, it was reversible error for the District Court to circumscribe EnvTech's allegations contained in those other civil lawsuits without further discerning that DeBusk could *also* be liable for theft of trade secrets

---

[85] *True*, 571 F.3d at 417.
[86] *Stem*, 813 F.3d at 209 (quoting *Iqbal*, 556 U.S. at 678).
[87] ROA.90-91.

under 18 U.S.C. § 1832 for those same alleged acts. In effect, the District Court erroneously required EnvTech to prove the merits of USAD's alleged "pattern of racketeering activity" before permitting EnvTech to proceed with discovery to obtain proof of those very allegations.

That is, EnvTech need only allege enough facts to state a claim for relief that is plausible on its face, in which event EnvTech is entitled to pursue discovery to prove the factual allegations set forth in those four other lawsuits (which are more fully summarized in EnvTech's first amended complaint[88]). Indeed, although those four other lawsuits included only *claims* for civil trade secret misappropriation, they each also included *allegations* of theft of trade secrets that DeBusk prevented from proceeding past the initial pleading stage by settling those lawsuits.[89]

Thus, the issue is not whether those four other lawsuits alleged the *crime* of theft of trade secrets (as previously discussed, it is unsurprising they did not), but whether the alleged thefts of trade secrets in those four other lawsuits are sufficient to support the reasonable inference that—***upon a proper showing of proof after discovery***—DeBusk is civilly liable under RICO for the crime of theft of trade secrets under 18 U.S.C. § 1832(a)(1), (3), or (5). In this regard, EnvTech's first amended complaint identifies the specific allegations made by USAD's competitors

---

[88] ROA.373-383 [¶¶ 80-108].
[89] ROA.373-383 [¶¶ 80-108].

concerning USAD's intentional thefts of their trade secrets for the economic benefit of USAD.[90]

Notably, the District Court correctly recognized that it is immaterial that three of the four other lawsuits were brought against USAD and not DeBusk personally because "[t]he competitors sued USAD" and, under 18 U.S.C. § 1962(c), for DeBusk to be liable under RICO "EnvTech need only plead facts sufficient to conclude DeBusk was employed by or associated with an enterprise engaged in racketeering, *i.e.* USAD."[91] EnvTech alleges—and it is undisputed—that DeBusk is the founder, chairman, and chief executive officer of USAD. [92]

Further, the four other lawsuits sought relief under the Texas Uniform Trade Secrets Act,[93] which defines "misappropriation" as "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means,"[94] and defines "improper means" as including "theft."[95] Both HydroChem lawsuits also specifically alleged that USAD used

---

[90] ROA.373-383 [¶¶ 80-108]; *Huntingdon Life Scis., Inc. v. Rokke*, 986 F. Supp. 982, 989 (E.D.Va. 1997) (denying motion to dismiss RICO claims based on "pattern" element because "Huntingdon has gone beyond cursory allegations of lawsuits and newspaper reports and specified details of the alleged predicate acts undertaken by each individual defendant. ***Without the aid of discovery, Huntingdon cannot be expected to more fully develop its allegations***.") (emphasis added).

[91] ROA.342.

[92] ROA.347 [¶ 11].

[93] ROA.104-203 [ROA.116; ROA.133; ROA.156; ROA.199].

[94] Tex. Civ. Prac. & Rem. Code § 134A.002(3)(A).

[95] *Id.*, § 134A.002(2).

"improper means" to acquire its trade secrets.[96] Importantly, too, EnvTech alleges in its first amended complaint that USAD effectively admitted in the Texas state court lawsuit that the four other lawsuits were not frivolous.[97]

The District Court, therefore, erred in dismissing EnvTech's RICO claim against DeBusk because EnvTech's first amended complaint more than plausibly alleges that DeBusk engaged in a "pattern of racketeering activity" through at least five related thefts of four separate competitors' trade secrets.

## C.    **EnvTech More Than Plausibly Alleged "Open-Ended Continuity."**

In dismissing EnvTech's first amended complaint, the District Court apparently did not address or rely on the continuity requirement,[98] as DeBusk did not assert this contention in his motion to dismiss EnvTech's original complaint.[99] Regardless, EnvTech's first amended complaint more than plausibly alleges "open-ended continuity" based on USAD's *modus operandi—i.e.*, its pattern or regular course of business—of hiring its competitors' key employees who have knowledge of their former employers' trade secrets and then using those competitors' trade secrets for the economic benefit of USAD.[100]

---

[96] ROA.382 [¶ 106].
[97] ROA.383-384 [¶¶ 81-83].
[98] ROA.540.
[99] ROA.82.
[100] ROA.345 [¶ 2]; ROA.374 [¶ 83]. Because EnvTech's first amended complaint satisfies the "open-ended continuity" requirement, it need not satisfy the alternative "closed-ended continuity" requirement. *D&T Partners, L.L.C.*, 98 F.4th at 208 ("Without a closed-ended pattern, a plaintiff may nevertheless state a RICO claim by alleging 'open-ended' continuity.").

The "open-ended continuity" requirement "exists when a threat of continuing criminal activity extends indefinitely into the future," and is established by predicate acts that "are a regular way of conducting defendant's ongoing legitimate business" or "ongoing and legitimate RICO 'enterprise.'"[101] That is, a plaintiff alleges an open-ended pattern of continuity if "the predicate acts themselves pose a *threat* of continuity," which may include pleading "an identical or analogous fact pattern" or the commission of predicate acts as a "regular way of doing business."[102]

In its first amended complaint, EnvTech alleges the pertinent facts underpinning the four other lawsuits in which DeBusk personally participated and directed USAD's *modus operandi* of hiring its competitors' key employees with knowledge of those competitors' trade secrets so USAD could obtain the economic benefit of using those misappropriated trade secrets.[103] EnvTech also alleges that DeBusk's direction, support, and approval were required for USAD to proceed with the use of EnvTech's trade secret.[104] EnvTech further alleges that USAD provides industrial cleaning services across numerous industries and applications,[105] and DeBusk's own motion to dismiss confirms that DeBusk is the CEO and co-founder

---

[101] *D&T Partners, L.L.C.*, 98 F.4th at 208-09 (internal quotations and citation omitted).
[102] *Id.* at 209 (emphasis in original; internal quotations and citations omitted).
[103] ROA.373-383 [¶¶ 80-108].
[104] ROA.355-356 [¶¶ 32-33]; ROA.371-372 [¶ 79].
[105] ROA.345 [¶ 3].

of USAD, which has "39 offices across the United States and employs over 2,500 full-time employees."[106]

Thus, EnvTech more than plausibly alleged "open-ended continuity" based on: (i) multiple and related schemes and victims, which demonstrate an identical or analogous fact pattern or regular way of doing business; and (ii) the breadth and scope of USAD's global operations, which necessarily create future opportunities to steal other competitors' trade secrets and are the opposite of a finite scheme that has reached its natural conclusion.[107] Indeed, EnvTech alleges that DeBusk's first known theft of trade secrets occurred soon after he sold his majority interest in another chemical cleaning business in 2011.[108] That trade secret theft was committed about a decade before the five thefts of trade secrets to steal USAD's competitors' market shares for DeBusk's current business that form the basis of this RICO case.

## CONCLUSION

For all the foregoing reasons, EnvTech respectfully requests that this Court reverse the District Court's dismissal of EnvTech's first amended complaint, and

---

[106] ROA.394.

[107] *D&T Partners, L.L.C.*, 98 F.4th at 207 ("If numerous schemes are alleged, such allegations are highly relevant to the continuity inquiry and tend to support such a finding.... [A] single scheme to accomplish one discrete goal, directed at one individual with no potential to extend to other persons or entities is not the type of racketeering 'pattern' RICO seeks to prohibit.") (internal quotations and citations omitted); *Bartlett*, 2017 WL 5499403, at *6 ("[P]laintiff argues that the defendants plan to ... 'continue plundering the lending stores' .... At the motion to dismiss stage, the Court must take these allegations as true. And if the allegations are true, plaintiff has alleged past conduct that 'by its nature projects into the future with a [specific] threat of repetition' that satisfies the *Twombly* pleading standards.") (citation omitted).

[108] ROA.383-384 [¶¶ 109-13].

grant EnvTech such other and further relief to which it is justly entitled.

Dated: June 24, 2025.

Respectfully submitted,

*/s/ Robert M. Millimet*
Robert M. Millimet
Texas State Bar No. 24025538
rob@richardslawpllc.com
Jennifer S. Richards
Texas State Bar No. 24079262
jrichards@richardslawpllc.com

**RICHARDS LAW PLLC**
6125 Luther Lane, No. 301
Dallas, Texas 75225
Telephone: (469) 480-4978

-and-

Reece Rondon
Texas State Bar No. 00794559
rrondon@hallmaineslugrin.com
Jeffrey T. Bentch
Texas State Bar No. 24055160
jbentch@hallmaineslugrin.com

**HALL MAINES LUGRIN, P.C.**
Williams Tower, 64th Floor
2800 Post Oak Boulevard
Houston, Texas 77056-6125
Telephone: (713) 871-9000
Facsimile: (713) 871-8692

-and-

William A. Cohan, Esq.
California State Bar No. 141804
bill@williamacohan.com
Gabriel L. Cohan, Esq.
California State Bar No. 259449
gabriel@williamacohan.com

**WILLIAM A. COHAN, P.C.**
2888 Loker Avenue E, Suite 202
Carlsbad, California 92010
Telephone: (442) 325-1111
Facsimile: (442) 325-1126

-and-

John D. O'Connor
California State Bar No. 54238
john@joclaw.com

**O'CONNOR AND ASSOCIATES**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 693-9960
Facsimile: (415) 692-6537

**COUNSEL FOR PLAINTIFF -
APPELLANT ENVTECH,
INCORPORATED**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of this document was served on all counsel of record in accordance with the Federal Rules of Civil Procedure on June 24, 2025.

*/s/ Robert M. Millimet*
Robert M. Millimet

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

- this brief contains 6,569 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.     This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type requirements of Fed. R. App. R. 32(a)(6) because:

- this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 with **Times New Roman** in **14 point font**.


*/s/ Robert M. Millimet*
Robert M. Millimet

Dated: June 24, 2025.